LAURA E. DUFFY
United States Attorney

CAROLINE D. CIRAOLO
Acting Assistant Attorney General – Tax Division

RUSSELL J. EDELSTEIN
MA Bar No. 663227
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238 – Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-2704; Fax: (202) 514-6770
russell.j.edelstein@usdoj.gov
**Attorneys for the United States of America**

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. 3:15-cv-00643-GPC-WVG |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **OF POINTS AND AUTHORITIES** |
| v. | ) | **IN SUPPORT OF ITS MOTION** |
| | ) | **FOR DEFAULT JUDGMENT** |
| | ) | |
| LAWRENCE PRESTON SIEGEL | ) | |
| (a/k/a Larry Lave, Yehuda Lave, | ) | Date:  November 13, 2015 |
| and Larry Easy) | ) | Time:  1:30 PM |
| | ) | Courtroom:  2D |
| Defendant. | ) | Judge:  Hon. Gonzalo P. Curiel |
| | ) | |
| | ) | **NO ORAL ARGUMENT UNLESS** |
| | ) | **REQUESTED BY THE PARTIES** |

September 2, 2015

## TABLE OF CONTENTS

Argument …………………………………..…………………………….. p. 1

   The *Eitel* Factors Are Satisfied …………………………………….. p. 2

   A Permanent Injunction Should Issue Under I.R.C. § 7408 ……….. p. 5

      I.R.C. § 7408 Injunction for Violations of I.R.C. § 6700 ………. p. 6

      I.R.C. § 7408 Injunction for Violations of I.R.C. § 6701 ………. p. 12

      Necessity of an Injunction to Prevent Recurring Violations ……. p. 13

   Siegel Should Be Barred From Tax Preparation (I.R.C. § 7407) …... p. 15

   A Permanent Injunction is Warranted Under I.R.C. § 7402 ………... p. 18

   Proposed Injunction Terms …………………………………..……… p. 18

Conclusion …………………………………………………………… p. 21

## TABLE OF AUTHORITIES

*Boyd Gaming Corp. v. Comm'r*, 177 F.3d 1096 (9th Cir. 1999) ……...…… pp. 8-9

*Cox v. Chaco*, 650 F.2d 174 (9th Cir.1981) …………………………..…… pp. 8-9

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978)…………………..……… p. 3

*Derek Andrew, Inc. v. Proof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008) …… p. 2

*DIRECTV, Inc. v. Oliver*, 2005 WL 1126786 (N.D. Cal. May 12, 2005) .......... p. 2

*Dixon v. Comm'r*, 15 Fed. Appx. 469 (9th Cir. 2001) ………………….……… p. 7

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ……………...…….…..… pp. 2, 4-5

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) …………..…... p. 2

*Salem Fin., Inc. v. U.S.*, 786 F.3d 932 (Fed. Cir. 2015) …………….....……… p. 10

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) …………...… p. 2

*UnionBanCal Corp. & Subsid. v. U.S.*, 113 Fed. Cl. 117 (Fed. Cl. 2013).. pp. 10-11

i

*U.S. v. Barnes*, 2015 WL 2386190 (C.D. Cal. Apr. 3, 2015)……………...… pp. 4-5

*U.S. v. Broadster Kitchen, Inc.*, 2015 WL 4545360

(C.D. Cal. May 27, 2015)……………………………………………….. pp. 15, 18

*U.S. v. Buttorff*, 761 F.2d 1056 (5th Cir. 1985)…………………………... p. 5

*U.S. v. Cathcart*, 2010 WL 1048829 (N.D. Cal. Feb. 12, 2010)……..…….… p. 3

*U.S. v. Elsass*, 978 F. Supp. 2d 901, 942 (N.D. Ohio 2013)………..……… p. 19

*U.S. v. Estate Pres. Servs.*, 202 F.3d 1093 (9th Cir. 2000)…..…....…. pp. 5-6, 11-13

*U.S. v. Gleason*, 432 F.3d 678 (6th Cir. 2005)……………………………. p. 5

*U.S. v. ITS Fin., LLC*, 592 Fed.Appx. 387 (6th Cir. 2014)…………………. p. 19

*U.S. v. Jenkins*, 2013 WL 2387704 (C.D. Cal. May 2, 2013)……………… p. 20

*U.S. v. Jones*, 2011 WL 2680742 (D. Idaho Jul. 7, 2011)…………………. p. 19

*U.S. v Kirk*, 2012 WL 1099772 (W.D. Wash. Apr. 2, 2012)………………. p. 19

*U.S. v. Kukhahn*, 2008 WL 3928028 (W.D. Wash. Aug. 21, 2008)………..… p. 20

*U.S. v. Marty*, 2011 WL 4056091 (E.D. Cal. Sept. 12, 2011)…………….....… p. 4

*U.S. v. McIntyre*, 715 F. Supp. 2d 1003 (C.D. Cal. 2010)…………………. p. 16

*U.S. v. Moser*, 2005 U.S. Dist. LEXIS 28256 (D. Haw. Oct. 17, 2005)……… p. 18

*U.S. v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000)…………………….....… p. 6

*U.S. v. Torres*, 2013 WL 7137587 (C.D. Cal. Apr. 17, 2013)…………..........… p. 3

*U.S. v. Trunzo*, 2013 WL 2443147 (C. D. Cal. Apr. 25, 2013)…………..…… p. 20

*U.S. v. Waage*, 3:11-cv-00403-WQH-DHB, Doc. No. 59, p. 3

(S.D. Cal. Aug. 27, 2012)……………………………………..…… p. 20

*U.S. v. White*, 769 F.2d 511 (8th Cir. 1985)………………………………. p. 5

*Vanicek v. Comm'r*, 85 T.C. 731, 737-42 (U.S. Tax Ct. 1985)………………. p. 9

ii

Treas. Reg. § 1-119-1……………………………………………………………... p. 9

26 U.S.C. ("I.R.C.") I.R.C. § 119…………………………………..………… pp. 8-10

I.R.C. § 280A……………………………………………………………… pp. 7-8

I.R.C. § 280A(c) ………………………………………………………… p. 7

I.R.C. § 6694……………………………………………………..…… pp. 15-17

I.R.C. § 6694(a)(2) ………………………………………………..…..… p. 16

I.R.C. § 6694 (b)(2)(A) ……………………………………………..… p. 16

I.R.C. § 6695 ………………………………………………………..…… pp. 15-17

I.R.C. § 6695(c) …………………………………………….………... p. 16

I.R.C. § 6700……………………………………….…..…………… pp. 5-6, 11-12, 21

I.R.C. § 6701……………………… …..………………………… pp. 5, 12-13, 21

I.R.C. § 7402……………………………………...……………… pp. 1, 3-4, 18-21

I.R.C. § 7402(a) ……………………………..…………………………… p. 18

I.R.C. § 7407…………………………..……………... pp. 1, 3-5, 15-17, 19-21

I.R.C. § 7407(b)……………………………………………………… p. 16

I.R.C. § 7407(b)(1)(B)……………………………………………..… p. 17

I.R.C. § 7407(b)(1)(D)……………………………………………….... p. 17

I.R.C. § 7408……………………………...…..…………... pp. 1, 3-6, 12-13, 15, 20-21

Fed. R. Civ. P. 4(f)(3)……………………………………………….. p. 1

Fed. R. Civ. P. 55(a)……………………………………………………… p. 2

Fed. R. Civ. P. 55(b)(2)………………………………………………… p. 1

Fed. R. Civ. P. 65(d)(2) …………………………………...…………… p. 15

CivLR 55.1……………………………………………………………... p. 1

iii

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and CivLR 55.1, plaintiff United States respectfully requests that the Court enter default judgment against defendant Lawrence Preston Siegel. As addressed in detail in its accompanying Statement of Facts ("SOF"), the United States alleges that Siegel, also known as Larry Lave, Yehuda Lave, and Larry Easy, prepares fraudulent federal tax returns and tax forms, including tax returns predicated on abusive tax arrangements he promotes and establishes for his customers.

Despite completion of alternative service of process following the Court's June 5, 2014 Order (Doc. No. 5.) granting the United States leave to serve process pursuant to Rule 4(f)(3), Siegel has failed to plead, answer, or otherwise appear in this matter.[1] The Clerk, therefore, entered a default against Siegel on August 3, 2015. (Doc. No. 9.) The Court should now enter a judgment by default that permanently enjoins Siegel under 26 U.S.C. ("I.R.C.") §§ 7402, 7407, and 7408 from, *inter alia*: (1) preparing tax returns for others; (2) operating, owning, or working in any business (including any solo practice) that provides tax advice; and (3) providing tax advice for compensation or any promise of compensation.

## **Argument**

Rule 55(b)(2) of the Federal Rules of Civil Procedure allows the Court in its

---

[1] *See* Declaration of Russell J. Edelstein (Doc No. 7), confirming service of the Complaint, Amended Summons, Motion for Alternative Service of Process (including all filed supporting materials) by: (1) e-mail to Siegel; (2) e-mail and FedEx delivery to Siegel's attorney, Samuel Brotman, who contacted undersigned counsel about this case on behalf of Siegel but refused to appear in this action or accept service of process; and (3) hand-delivery to Brotman's law office in California by IRS Revenue Agent Roma Patel. The Government's request for entry of default (Doc. No. 8, p. 4) was also served on Siegel and Brotman.

1

discretion to enter a judgment of default.  Where a default has been entered pursuant to Fed. R. Civ. P. 55(a), the defendant loses his standing before the court, along with his right to present evidence on all issues, except as to the amount of any monetary damages claimed by the plaintiff.  *See Derek Andrew, Inc. v. Proof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).  Thus, on a motion for default judgment, the district court accepts as true the well-pleaded factual allegations of the complaint, except those relating to damages, which the United States does not seek in this case.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Heidenthal*, 826 F.2d at 917-18; *see also DIRECTV, Inc. v. Oliver*, 2005 WL 1126786, *4 (N.D. Cal. May 12, 2005) ("[t]here must be a sufficient basis in the pleadings for [default] judgment to be entered … [t]he defendant is not held to admit facts that are not well pleaded or to admit conclusions of law") (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Here, the well-pleaded allegations of the Complaint establish that Siegel prepares fraudulent federal tax returns and promotes and implements abusive tax arrangements for his customers.  The Court should enter a default judgment of permanent injunction because it is necessary to prevent recurrence of that conduct.

## I.   The *Eitel* Factors Are Satisfied.

In *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), the U.S. Court of Appeals for the Ninth Circuit set forth seven factors a court should consider in determining whether to grant a motion for default judgment:

15-cv-00643-GPC-WVG

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

**First**, the United States will suffer prejudice if default judgment is not entered. Siegel has failed to appear or respond to the allegations in this action and, thus, denial of judgment by default would leave the United States without a remedy. *See*, *e.g.*, *U.S. v. Torres*, 2013 WL 7137587, *3 (C.D. Cal. Apr. 17, 2013) (noting that "[a] denial of default judgment that leaves a plaintiff without other recourse has been found to be prejudicial" and issuing a default judgment injunction against a tax preparer under I.R.C. § 7407) (citation omitted); *U.S. v. Cathcart*, 2010 WL 1048829, *4 (N.D. Cal. Feb. 12, 2010) (noting that "[d]enying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor" and issuing an injunction against an abusive tax shelter promoter under I.R.C. §§ 7402 and 7408) (citation omitted). Given the seriousness of the United States' claims, any further delay in enjoining Siegel's conduct will prejudice the United States by causing further harm to the Government, Siegel's customers, and the public fisc.

**Second** and **Third**, the sufficiency of the complaint and the merits of the United States' substantive claim also heavily weigh in favor of default judgment. These factors require the Court to determine whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Here, the allegations of

3

the Complaint are well-pleaded: they total 38 pages and 98 separately-numbered paragraphs, and describe in great detail the enjoinable conduct at issue.  As set forth below (*infra*, pp. 5-18), these allegations, which are deemed admitted, demonstrate that Siegel has repeatedly violated the internal revenue laws, and an injunction under I.R.C. §§ 7402, 7407, and 7408 is appropriate.

*Fourth*, there is no money at stake in this action, and "[w]hen there is no money at stake in an action and only permanent injunctive relief is sought, the fourth *Eitel* factor weighs in favor of default judgment."  *U.S. v. Barnes*, 2015 WL 2386190, * 6 (C.D. Cal. Apr. 3, 2015) (granting default judgment to permanently enjoin a tax return preparer) (citations omitted).  Unlike a claim for monetary damages, an action by the United States seeking injunctive relief involves "a more important issue at stake:  whether [defendant's] interference with a legitimate government function will be allowed to stand."  *U.S. v. Marty*, 2011 WL 4056091, *6 (E.D. Cal. Sept. 12, 2011).

*Fifth*, a dispute as to a material fact is unlikely in this case.  The United States' factual allegations rely on documents created and distributed by Siegel to his customers, and "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."  *Barnes*, 2015 WL 2386190 at *6 (quotation omitted).

*Sixth*, Siegel's default is not due to excusable neglect.  As shown in the United States' motion for alternative service, including attached e-mails from counsel retained by Siegel in other matters, Siegel was well-aware of this case since March 2015, but sought to avoid service of process or make an appearance.

4

(Doc. Nos., 3-1, 3-12); *see also Barnes*, 2015 WL 2386190 at *7 (the sixth factor "favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit.") (quotation omitted).  In all, over five months have passed since the United States filed this action, and Siegel has failed to plead, otherwise defend in all respects, or offer any excuse explaining his nonappearance.

**Seventh**, while there is a strong policy favoring decisions on the merits, that policy does not, on its own, require denial of the United States' motion for default judgment.  "A defendant's failure to answer a plaintiff's complaint 'makes a decision on the merits impractical, if not impossible.'"  *Barnes*, 2015 WL 2386190 at *7 (quotation omitted).

For all of the foregoing reasons, the *Eitel* factors weigh heavily in favor of default judgment.

## II.    A Permanent Injunction Should Issue Under I.R.C. § 7408.

This Court has the authority to grant injunctive relief under I.R.C. § 7408 against individuals who engaged in conduct subject to penalty under I.R.C. §§ 6700 or 6701, and injunctive relief is appropriate to prevent the recurrence of that conduct.   Siegel's repeatedly violated both §§ 6700 and 6701, which warrants a permanent injunction under § 7408.[2]

---

[2] Because both I.R.C. §§ 7407 and 7408 expressly provide for an injunction, the traditional guidelines for equitable relief do not have to be established for an injunction to issue. *U.S. v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005); *U.S. v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000); *U.S. v. White*, 769 F.2d 511, 515 (8th Cir. 1985); *U.S. v. Buttorff*, 761 F.2d 1056, (continued...)

5

A.    *I.R.C. § 7408 Injunction for Violations of I.R.C. § 6700.*

Section 6700 penalizes any person who makes statements regarding the tax benefits of any plan or arrangement organized or sold by him that he knows or has reason to know are false or fraudulent as to any material matter.  Five elements must be shown to obtain an injunction under I.R.C. § 7408 for § 6700 violations:

> (1) the defendant[] organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) [he] made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) [he] knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct.

*See U.S. v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000).

***First***, Siegel organizes and sells an arrangement where he establishes "C" corporations for his customers, typically in Nevada where customers have no contacts, and uses these "C" corporations to illegally reduce or eliminate his customers' reported tax liabilities.  (SOF, ¶¶ 5-11)  This "out-of-state" "C" corporation scheme is a "plan or arrangement" within the meaning of I.R.C. § 6700.  *See U.S. v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000) ("under § 6700 any 'plan or arrangement' having some connection to taxes can be a 'tax shelter'").

Moreover, Siegel was intimately involved in the establishment, organization, and operation of his customers' "C" corporations.  (SOF, ¶¶ 5-17.)  He filed

---

(… continued)

1059 (5th Cir. 1985) ("When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.").

6

documents establishing and maintaining the corporations, served as an officer of

them, in some instances maintained corporate records, guided customers about

what expenses to track to improperly claim as business expense deductions on tax

returns he prepared, and drafted sham employment contracts between the "C"

corporations and the customers in order to assist his customers to evade payment of

employment taxes. (*Id.*)

   ***Second***, Siegel has made or caused to be made, false or fraudulent

statements concerning the tax benefits to be derived from participation. For

example, Siegel falsely advised customers that by implementing the "C"

corporation scheme, their entire home becomes an out-of-state business office

because the customer is "on call 24/7" while living or working from their out-of-

state "business office," which purportedly transforms a vast array of personal

expenses into tax deductible business expenses, including meal costs, utility bills,

and payments for their home. (SOF, ¶¶ 5, 8-12.) No provision of the internal

revenue laws supports such an interpretation.

   Section 280A of the I.R.C. generally prohibits any deduction for business

use of a taxpayer's home. While I.R.C. § 280A(c) allows taxpayers to claim

certain legitimate home office deductions on their tax returns, taxpayers must

prove they meet one of the enumerated statutory exceptions to I.R.C. § 280A, such

as using a portion of their residence exclusively and on a regular basis as a place of

business. *See Dixon v. Comm'r*, 15 Fed. Appx. 469, 470 (9th Cir. 2001)

(unpublished) (citing *Pomorantz v. Comm'r*, 867 F.2d 495, 496 (9th Cir. 1988),

which notes the "heavy burden on the taxpayer to establish that home office

7

expenses are deductible").  The exceptions to Section 280A do not apply here.  No portion of I.R.C. § 280A legally supports Siegel's false statements to customers that their entire homes become out-of-state business offices merely:  (1) by establishing an out-of-state "C" corporation; and (2) because the customer is "on call 24/7" while living or working from their purported out-of-state "business office."  (SOF, ¶¶ 8-11.)

Nor is there any legal basis under I.R.C. § 119 for Siegel to advise customers that creating an out-of-state "C" corporation transforms their entire home into a business office and personal expenses incurred at the home, including meals, into business expenses.  Section 119 exempts employer-provided lodging and meals from taxable compensation reported on employees' individual tax returns, if the lodging and meals are necessary for the performance of the employees' job duties. *See Boyd Gaming Corp. v. Comm'r*, 177 F.3d 1096, 1097, 1100 (9th Cir. 1999) (citing *Comm'r v. Kowalski*, 434 U.S. 77 (1977)).  For the employer, these expenses may be deductible.  *Id.*  In order for Section 119 to apply, the taxpayer must prove three elements:

- First, the lodging and meals must be "furnished for the convenience of the employer";

- Second, the lodging and meals are provided "on the business premises of the employer"; and

- Third, the employee was "required to accept such lodging [or meals] as a condition of his employment."

*Cox v. Chaco*, 650 F.2d 174, 175-76 (9th Cir.1981) (holding that a taxpayer failed to meet the third element of Section 119 when he failed to show that his employer

8

1  required him to accept free housing).

2      The circumstances under which I.R.C. § 119 applies are narrow.  For

3  example, in *Boyd Gaming*, the Ninth Circuit concluded that free meals provided by

4  a casino to its employees on the business' premises qualified under Section 119

5  and, under the First Element described in *Chaco*, were furnished for the

6  convenience of the employer because of a "substantial non-compensatory business

7  reason" specific to the casino industry:  valid logistical and security reasons for

8  having employees eat lunch on-premises.  *Boyd Gaming*, 177 F.3d at 1100-01.

9  Similarly, in *Vanicek v. Comm'r*, the U.S. Tax Court held that lodging provided to

10  watchmen for a forest preserve qualified under Section 119 because, given the

11  specific requirements of the job, the forest preserve legitimately needed the

12  watchmen to live in strategically located lodgings in order to be on-call to respond

13  to emergencies.  85 T.C. 731, 737-42 (U.S. Tax Ct. 1985); *see also* Treas. Reg. §

14  1-119-1 (providing additional examples applying Section 119).

15      In this action, however, I.R.C. § 119 does not support Siegel's statements to

16  customers regarding the purported tax benefits of the out-of-state "C" corporation

17  scheme.  For example, and as alleged in the Complaint, Siegel identifies no

18  authority in his written communications with customers (nor is the United States

19  aware of any) to support his false and fraudulent statements that:

20      a)  Valid, substantial non-compensatory business reasons (to satisfy the

21          First Element of I.R.C. § 119) include "requiring the Corporation's

22          key employee(s) to live on the Corporation's business premises

23          [because it] makes good business sense," and "[w]ithout a question in

9

2013 when we are truly on call 24/7 working at home is a deduction for the corporation" (SOF, ¶ 10);

b) Simply calling a customer's home an out-of-state business office transforms it, in its entirety, into a business premises under the Second Element of Section 119 (SOF, ¶¶ 8-10); or

c) Customers are required to accept free meals and housing from their "C" corporations (the Third Element of Section 119) because the customers, who control the out-of-state "C" corporations Siegel establishes for them, can impose upon themselves, as a condition of employment, that they live in their home while working away from their corporation's home state (*i.e.*, where the Siegel customer typically has no actual contact) (SOF, ¶ 9).

Finally, Siegel also made false or fraudulent statements when he told customers that they could enter into sham contracts with their "C" corporations, again an entity entirely controlled by the customers and Siegel, in order to convey customers' professional skills and expertise to the corporations, and this would transform income the customers received from their corporations into "royalties" exempt from employment taxes.  (SOF, ¶ 15.)  These contracts lack any economic substance, are sham transactions offered solely for tax purposes, and are ineligible for any tax benefit.  *See*, *e.g.*, *Salem Fin., Inc. v. U.S.*, 786 F.3d 932, 951 (Fed. Cir. 2015) (quoting *Winn-Dixie Stores, Inc. v. Comm'r*, 254 F.3d 1313, 1316 (11th Cir. 2001), which holds that "it is clear that transactions whose sole function is to produce tax deductions are substantive shams"); *UnionBanCal Corp. &*

10

*Subsidiaries v. U.S.*, 113 Fed. Cl. 117, 129 n. 29 (Fed. Cl. 2013) (discussing the sham-transaction doctrine, which disregards for tax purposes transactions that "lack economic reality in order to prevent taxpayers from subverting the legislative purpose of the [Internal Revenue] Code") (quotation omitted).

In sum, Siegel's statements regarding his tax schemes are false and fraudulent under I.R.C. § 6700.

**Third**, Siegel knew or had reason to know that his statements were false and/or fraudulent. For the out-of-state "C" corporation scheme, Siegel notably left supporting legal authority citations blank in his written memo to customers about the scheme. (SOF, ¶ 10.) Moreover, Siegel took great steps to conceal the deductions he falsely claimed on tax returns for his customers in connection with the scheme. Specifically, he lumped bogus business deductions on "C" corporation tax returns into single, large deductions categorized as supplies and office expenses to conceal them from the IRS. (SOF, ¶ 13.) As for his advice to mischaracterize income as royalties under sham "License Agreements," Siegel admitted that it is "not a problem *unless* the IRS finds it." (SOF, ¶ 16.)

**Fourth**, the false or fraudulent statements pertained to a material matter. Statements as to the "availability of tax deductions, credits, or to other mechanisms for reducing tax liability . . . clearly qualify as 'material'" under § 6700. *U. S. v. Estate Pres. Servs.*, 38 F. Supp. 2d 846, 855 (E.D. Cal. 1998), *aff'd* 202 F.3d 1093 (9th Cir. 2000). Because the result of Siegel's out-of-state "C" corporation scheme is tax avoidance, the tax statements made by him in the promotion of the scheme are material.

11

In sum, Siegel has engaged in conduct that violates § 6700, and the Court should therefore enter a default judgment of permanent injunction under § 7408. (*See infra* Section II(C), below, addressing the risk of recurrence factor).

B.    *I.R.C. § 7408 Injunction for Violations of I.R.C. § 6701.*

Section 6701 penalizes any person:  (1) who aids, assists, or advises with respect to the preparation of a document that he; (2) knows or has reason to believe will be used in connection with any material matter arising under the internal revenue laws; and (3) who knows that the document, if so used, would result in an understatement of another person's tax liability."  This Court is authorized under I.R.C. § 7408 to enjoin persons who have engaged in any conduct subject to penalty under § 6701 where the Court also finds that injunctive relief is appropriate to prevent recurrence of such conduct.  *Estate Pres. Servs.*, 202 F.3d at 1098.

*First*, by advising his customers to participate in the out-of-state "C" corporation scheme and preparing resulting fraudulent tax returns for them, Siegel aids his customers in the preparation of documents used to implement the scheme, including, *inter alia*, documents to establish the "C" corporations and income tax returns to claim fraudulent tax deductions.  (SOF, ¶¶ 5-17.)

*Second*, Siegel knows (or has reason to believe) that these documents will be used in connection with a material matter arising under the internal revenue laws. Indeed, the core purpose and effect of preparing these documents is to establish the out-of-state "C" corporation scheme in order to illegally deduct personal expenses as business expenses and evade the payment of employment taxes.  Siegel is well aware of these purported tax benefits and falsely touts them to customers as a legal

12

means to avoid paying federal taxes.  (SOF, ¶¶ 8-10, 12, 14-17.)

**Third**, Siegel knows that his customers' income tax returns will result in an understatement of tax liability, if submitted to the IRS.  As addressed above, Siegel attempted to: (1) conceal improper deductions from detection by the IRS by lumping them together and claiming them as supplies and office expenses on tax returns; and (2) admitted that mischaracterizing income as royalties under sham "License Agreements" is "not a problem *unless* the IRS finds it."

The admitted facts establish that each of these elements to obtain an injunction under § 7408 is met.  (*See infra* Section II(C), below, addressing the risk of recurrence factor).  The Court should therefore enter a default judgment of permanent injunction under § 7408, due to Siegel's violations of § 6701.

    C.    *Necessity of an Injunction to Prevent Recurring Violations.*

Finally, the Court should enter a default judgment of permanent injunction under § 7408 because an injunction is necessary to prevent recurrence of Siegel's conduct. Courts consider six factors when weighing the likelihood of recurrence and therefore the necessity for an injunction under § 7408, including:

> (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

*Estate Pres. Servs.*, 202 F.3d at 1105.  Here, consideration of these factors establishes that an injunction is necessary to prevent recurrence of Siegel's conduct.

13

***First***, the harm to the government and the public in this case is severe. Siegel's conduct has harmed: (1) the Government's ability to assess and collect the true tax liabilities of Siegel's customers; (2) Siegel's customers (who are liable for taxes owed and potential penalties); and (3) the public at-large.  (SOF, ¶ 27.)

***Second***, Siegel's participation in organizing and implementing his tax fraud schemes is extensive.  It spans from, *inter alia*, advising customers to enter into his schemes, personally creating out-of-state "C" corporations for customers, drafting documents and sham contracts to implement his schemes, advising customers which personal expenses to track in order for Siegel to prepare (or direct others to prepare) fraudulent tax returns, and defending against (and impeding) efforts by the IRS to uncover Siegel's fraud.  (SOF, ¶¶ 5-18.)

***Third***, Siegel knew or had reason to know his conduct was wrongful.  As addressed above, Siegel took substantial efforts to conceal his practice of claiming bogus business deductions for customers, admitted that evading employment taxes would be a problem if the IRS discovered the practice, and obstructed IRS efforts to discover the facts behind Siegel's schemes.

***Fourth***, the violations in this case are part of a systematic and recurring practice, dating back to at least 2008.  (SOF, ¶ 1.)

***Fifth***, Siegel has never recognized his own culpability.  Instead, he has consistently impeded and obstructed IRS examinations and lied to the I.R.S., the U.S. Tax Court, and his customers to cover-up his fraud.  (SOF, ¶¶ 18, 20-26.)

***Sixth***, by failing to answer to the Complaint, the United States' allegations that Siegel is likely to commit future tax violations are deemed admitted.  ***See U.S.***

14

*v. Broadster Kitchen, Inc.*, 2015 WL 4545360, *5 (C.D. Cal. May 27, 2015). In addition, Siegel presents a serious risk of recidivism. His convictions for multiple federal crimes in the 1990s, including tax evasion, has not dissuaded him from making a career of promoting abusive tax plans and preparing fraudulent tax returns since at least 2008. (SOF, ¶ 2.) A permanent injunction, backed by the Court's contempt powers, will make clear to Siegel that his days of unlawful tax activities are over.

In addition, Siegel's tax practice is largely operated remotely and/or electronically, making future violations of the internal revenue laws harder to detect. (SOF, ¶ 1.) If Siegel's customers and associates receive notice of a permanent injunction, it will be far more difficult for Siegel to conceal his wrongdoing from others or obtain the assistance of others to implement his tax fraud schemes. *See* Fed. R. Civ. P. 65(d)(2) (noting that an injunction issued under the Rule binds "other persons who are in active concert or participation" with an enjoined party to the action, if those persons "receive actual notice of [the injunction] by personal service or otherwise").

For all of the foregoing reasons, an injunction is necessary to prevent recurrence of this conduct, and the Court should enter a default judgment of permanent injunction under I.R.C. § 7408.

### III.    Siegel Should Be Barred From Tax Preparation (I.R.C. § 7407).

Under I.R.C. § 7407, the Court has the power to enjoin a federal tax preparer from preparing tax returns if the United States establishes that: (1) the preparer engaged in conduct subject to penalty under I.R.C. §§ 6694 or 6695, or

15-cv-00643-GPC-WVG

misrepresented his education and experience as a tax preparer, or engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws; (2) injunctive relief is appropriate to prevent the recurrence of such conduct; and (3) the preparer continually or repeatedly engaged in the proscribed conduct such that a more limited injunction prohibiting the misconduct would not be sufficient to prevent such person's interference with the proper administration of the internal revenue laws. *See* I.R.C. § 7407; *U.S. v. McIntyre*, 715 F. Supp. 2d 1003, 1009 (C.D. Cal. 2010) (citing *U.S. v. Kapp*, 564 F.3d 1103, 1109 (9th Cir.2009); *U.S. v. Nordbrock*, 828 F.2d 1401, 1403 (9th Cir.1987), and quoting I.R.C. § 7407(b)). As described below, the Complaint sets forth sufficient allegations, which are deemed admitted, to show that a permanent injunction preventing Siegel from preparing tax returns is necessary.

*First*, Siegel committed acts subject to penalty under I.R.C. §§ 6694 and 6695. Siegel violated I.R.C. § 6694 by, *inter alia*, preparing fraudulent returns that: (1) claimed personal expenses as business deductions and entirely bogus deductions (*e.g.*, for a non-existent employee benefit plan and a fictitious insurance warranty); (2) understated customer income (*e.g.*, alimony payments); and (3) evaded payment of employment taxes. (SOF, ¶¶ 12-13, 17, 19.) These acts constitute penalty conduct under I.R.C. §§ 6694(a)(2) and 6694(b)(2)(A) as willful attempts by Siegel to understate his customers' tax liabilities and are manifestly unreasonable positions for a tax preparer to take. Siegel also engaged in penalty conduct under I.R.C. § 6695(c) by using preparer identification numbers (PTINs)

16

belonging to other individuals on tax returns he prepared in order to evade detection by the IRS.  (SOF, ¶ 24.)

Moreover, Siegel repeatedly engaged in enjoinable conduct described in I.R.C. § 7407.  Siegel misrepresented his education and experience as a tax preparer by falsely claiming to customers, the Government, and the U.S. Tax Court that he is a C.P.A. and a lawyer, thereby violating I.R.C. § 7407(b)(1)(B).  (SOF, ¶¶ 20-26.)  Siegel also, *inter alia*: (1) attempted to interfere with IRS examinations; (2) provided false corporate records and contracts to the IRS to support the positions he took on tax returns; (3) filed customer tax returns without authorization; (4) forged a customer signature on a U.S. Tax Court filing (5); forged the signatures of licensed attorneys on correspondence to the IRS; (6) impersonated licensed attorneys on telephone calls with the IRS; and (7) lied to IRS officials during U.S. Tax Court litigation when asked to confirm customer information.  (SOF, ¶¶ 18-19, 24-25.)  Under I.R.C. § 7407(b)(1)(D), these acts constitute "fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws."

**Second** and **Third**, injunctive relief that completely bars Siegel from preparing tax returns is appropriate to prevent the recurrence of this conduct. Given the seriousness of the allegations, their repeated nature, and the wide variety of Siegel's illegal conduct under I.R.C. §§ 6694, 6695 and 7407, a narrower injunction enjoining specific forms of misconduct that does not bar Siegel from preparing tax returns would not be sufficient to prevent his continued interference with the proper administration of the internal revenue laws.

17

**IV.    A Permanent Injunction Is Warranted Under I.R.C. § 7402.**

This Court is authorized by I.R.C. § 7402 to issue an injunction "as may be necessary or appropriate for the enforcement of the internal revenue laws."  The remedies available to the United States under that statute "are in addition to and not exclusive of any and all other penalties."  I.R.C. § 7402(a).  Section 7402 "goes beyond merely codifying a district court's general equity power to grant injunctions" and "gives the district courts a full range of powerful tools to ensure the enforcement of both the spirit and the letter of the internal revenue laws."  *U.S. v. Moser*, 2005 U.S. Dist. LEXIS 28256, *15 (D. Haw. Oct. 17, 2005).

Injunctive relief under I.R.C. § 7402 "is appropriate if the defendant is reasonably likely to violate the federal tax laws again."  *Broadster*, 2015 WL 4545360 at *5 (granting default judgment injunction under I.R.C. § 7402) (citations omitted).  "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations."  *Id.*  (quoting *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980)).

As addressed above, from the allegations in the Complaint, deemed admitted by Siegel given his failure to answer, the totality of the circumstances demonstrate that Siegel has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, has done so since at least 2008, and is highly likely to continue to engage in such conduct unless enjoined.  Therefore, injunctive relief against Siegel is appropriate under § 7402.

**V.    Proposed Injunction Terms.**

The United States' proposed injunction order, submitted with its motion for

18

1    default judgment, would permanently bar Siegel from preparing tax returns – a

2    remedy specifically provided for in the statutory language of I.R.C. § 7407.   As

3    addressed above, Siegel's conduct warrants this remedy.

4         Although not expressly provided for in its statutory language, I.R.C. § 7402

5    grants the Court the authority to bar Siegel from operating, owning, or working in

6    any business (including any solo practice) that provides tax advice and from

7    providing tax advice for compensation or any promise of compensation.  *See*, *e.g.*,

8    *U.S. v. ITS Fin., LLC*, 592 Fed.Appx. 387, 394 (6th Cir. 2014) (affirming a § 7402

9    injunction entered after a bench trial against the CEO of a tax franchisor business,

10   permanently barring him "from operating any business related to tax return

11   preparation")[3]; *U.S. v. Elsass*, 978 F. Supp. 2d 901, 942 (N.D. Ohio 2013), *aff'd*

12   759 F.3d 390 (6th Cir. 2014) (granting summary judgment in the Government's

13   favor, enjoining a tax return preparer from preparing returns, and barring defendant

14   "from otherwise advising or assisting any person or entity regarding any tax related

15   matter").  District courts within this Circuit have also entered injunctions with

16   similar provisions at summary judgment and default judgment.  *See*, *e.g.*, *U.S. v*

17   *Kirk*, 2012 WL 1099772, *3 (W.D. Wash. Apr. 2, 2012) and *U.S. v. Jones*, 2011

18   WL 2680742, *9 (D. Idaho Jul. 7, 2011) (issuing injunctions on motions for

19   summary judgment barring defendants from "[g]iving tax advice or assistance to

20   _____

21   [3] The Sixth Circuit's opinion in *ITS Financial* also reviews "numerous cases" where district
     courts have permanently barred tax preparers from assisting or advising anyone about the
22   preparation of federal tax returns.  *See id*. at 396-97.

23

anyone for compensation"); *U.S. v. Kukhahn*, 2008 WL 3928028, *6 (W.D. Wash. Aug. 21, 2008) (granting a default judgment injunction to enjoin defendant from "giving advice to anyone about the federal tax laws or federal tax matters"). Moreover, district courts in the Ninth Circuit have entered permanent consent injunctions baring individuals from all involvement in businesses that provide tax advice. *See*, *e.g.*, *U.S. v. Jenkins*, 2013 WL 2387704, *1 (C.D. Cal. May 2, 2013); *U.S. v. Trunzo*, 2013 WL 2443147, *2 (C. D. Cal. Apr. 25, 2013); *see also U.S. v. Waage*, 3:11-cv-00403-WQH-DHB, Doc. No. 59, p. 3 (S.D. Cal. Aug. 27, 2012) (baring defendant from "providing any individual or entity with any advice related to federal taxes"). Based on the allegations in the Complaint and for the reasons discussed above, the Court should enjoin Siegel under I.R.C. § 7402 from operating, owning, or working in any business (including any solo practice) that provides tax advice and from providing tax advice for compensation or any promise of compensation.[4]

Pursuant to I.R.C. §§ 7402, 7407, and 7408, additional terms requested by the Government would bar Siegel from specific misconduct identified in the Complaint. They would also grant the United States leave to conduct post-judgment discovery to ensure compliance with any permanent injunction entered by the Court.

---

[4] This relief is narrower than requested in the Complaint, which seeks an order barring Siegel from "[p]roviding any individual or entity with advice relating to federal taxes," irrespective of whether Siegel provides the tax advice for compensation or a promise of compensation. (Complaint, p. 36, Prayer for Relief (E)(iv).)

20

## <u>Conclusion</u>

For all of the foregoing reasons, the United States respectfully requests that the Court grant the United States' motion to permanently enjoin Siegel pursuant to §§ 7402, 7407, and 7408 (for violations of I.R.C. §§ 6700 and 6701) from, *inter alia*, (1) preparing tax returns for others; (2) operating, owning, or working in any business (including any solo practice) that provides tax advice; and (3) providing tax advice for compensation or any promise of compensation.  A proposed order will be submitted with this Motion.

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

CAROLINE D. CIRAOLO
Acting Assistant Attorney General
Tax Division

s/ Russell J. Edelstein
RUSSELL J. EDELSTEIN
MA Bar No. 663227
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238 – Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-2704
Fax: (202) 514-6770
russell.j.edelstein@usdoj.gov
**Attorneys for Plaintiff**

Dated:  September 2, 2015    **United States of America**

21

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2015, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, and that pursuant to Fed. R. Civ. P. 5(b)(2)(C) I will send the foregoing to defendant Lawrence Preston Siegel by regular mail at his last known addresses:

> 7437 South Eastern Avenue
> Apt. 235
> Las Vegas, NV 89123

> 6105 Pontiac Street
> San Diego, CA 92115

I further certify that on September 2, 2015, I will send an electronic copy of the foregoing to Siegel's last known e-mail address of aaaamerican@gmail.com and to Samuel D. Brotman, 5134 Saratoga Avenue, Suite 5, San Diego, CA 92107, sbrotman@sambrotman.com, by regular mail and electronic mail.


> s/ Russell J. Edelstein
> RUSSELL J. EDELSTEIN
> U.S. Department of Justice
> Tax Division

22

15-cv-00643-GPC-WVG