LAURA E. DUFFY
United States Attorney

CAROLINE D. CIRAOLO
Acting Assistant Attorney General – Tax Division

RUSSELL J. EDELSTEIN
MA Bar No. 663227
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238 – Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-2704; Fax: (202) 514-6770
russell.j.edelstein@usdoj.gov
**Attorneys for the United States of America**

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>LAWRENCE PRESTON SIEGEL<br>(a/k/a Larry Lave, Yehuda Lave,<br>and Larry Easy)<br><br>   Defendant. | Civil No. 3:15-cv-00643-GPC-WVG<br><br>**PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT**<br><br>Date:  November 13, 2015<br>Time:  1:30 PM<br>Courtroom:  2D<br>Judge:  Hon. Gonzalo P. Curiel<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE PARTIES** |

September 2, 2015

15-cv-00643-GPC-WVG

# TABLE OF CONTENTS

Facts ……………………………………….…………....…… p. 1

    Out-of-State "C" Corporation Scheme ………………………………… p. 2

    Fraudulent Tax Returns ……………………….………………… p. 5

    Evading Payment of Employment Taxes …………………………… p. 6

    Delay and Obstruction of IRS Examinations ……………………….. p. 7

    Filing Tax Returns without Authorization ………………………….. p. 8

    Misrepresentation of Credentials, Use of False

        Identities, Unauthorized Practice of Law ………….…………. p. 8

    Harm Caused by Siegel …………………………………………….. p. 11

The facts below track the Complaint filed in this action and are deemed admitted due to Defendant Lawrence Preston Siegel's failure to plead, answer, or otherwise appear in this matter.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Heidenthal*, 826 F.2d at 917-18; *see also DIRECTV, Inc. v. Oliver*, 2005 WL 1126786, *4 (N.D. Cal. May 12, 2005).

## Facts

1. From at least 2008 to the present, Siegel has promoted tax fraud schemes and prepared fraudulent tax returns for his customers.  (Complaint, Doc. No. 1, ¶ 16.)   Siegel promotes his tax fraud schemes to self-employed individuals and high earners in California who own profitable businesses, as well as customers in locations throughout the United States.  (*Id*. ¶ 17.)  Siegel primarily communicates with his customers remotely and/or electronically.  (*Id*. ¶ 18.)  This allows Siegel to more easily operate his tax practice from any location he chooses.  (*Id*.)

2. In 1980, Siegel obtained a C.P.A. license for California and, in 1982, was admitted to the State Bar of California to practice law.  (*Id*. ¶ 7.)  In 1994, 1995, 1998, and 1999, Siegel was convicted of federal crimes for: (a) tax evasion; (b) subscribing false tax returns; (c) making false statements to obtain furlough passes while serving his sentence for his 1994 conviction; (d) bail jumping; (e) fraudulent use of social security numbers in order to open bank accounts and with intent to deceive multiple financial institutions; (f) causing a financial institution to file false Currency Transaction Reports with the IRS in connection with a payment or transfer of currency; (g) making a false statement in an application for a U.S. passport with the intent to induce and secure the issuance of the passport; and (h)

fraudulent use of an instrument purporting to be a passport.  (*Id*. ¶ 9.)

3. On June 23, 1994, Siegel resigned from the State Bar of California with charges pending against him, and since June 1994, has been ineligible to practice law in any state.  (*Id*. ¶ 11.)  In 1997 the Board of Accountancy for the California Department of Consumer Affairs revoked Siegel's C.P.A. license for committing crimes "related to the qualifications, functions and duties of a certified public accountant." (*Id*. ¶ 12.)   At no time since 1997 did Siegel regain a C.P.A. license in California or obtain such a license in any other state.  (*Id*.)

4. Siegel's illegal conduct subject to injunction in this action includes promotion and implementation of an out-of-state "C" corporation scheme (*Id*. ¶¶ 19-36), preparation of fraudulent tax returns (*Id*. ¶¶ 37-44), assisting customers to evade payment of employment taxes (*Id*. ¶¶ 45-55), delaying and obstructing IRS examinations of his customers (*Id*. ¶ 69), filing customer tax returns without his customers' authorization (*Id*. ¶¶ 70-71), as well as misrepresenting his credentials, using false identities, and the unauthorized practice of law (*Id*. ¶¶ 56-68).

*Out-of-State "C" Corporation Scheme*

5. Siegel advises his customers to form and personally assists them to establish their businesses as "C" corporations, typically under Nevada law, where the customers have no contacts.  (*Id*. ¶¶ 19, 22.)  These "C" corporations are used as instruments by Siegel to illegally reduce or eliminate his customers' reported tax liabilities.  (*Id*. ¶ 19.)

6. In some instances, Siegel improperly treats multiple, unrelated businesses, each owned by different Siegel customers, as a single "community"

"C" corporation for tax purposes. (*Id.*, ¶ 20) Siegel has prepared tax returns for these "community corporations" that improperly assign customer income to the "community corporation" and co-mingle reportable financials among the unrelated businesses. (*Id.*) Siegel does this to illegally reduce the reported tax liabilities of his customers, including by claiming improper business expense deductions. (*Id.*)

7. Siegel also establishes out-of-state "C" corporations for use by a single customer. (*Id.* ¶ 21.) He prepares and files documents used to establish these out-of-state "C" corporations, oversees recurring filings with state entities to maintain the corporate status of the companies, assists customers to establish bank accounts for the "C" corporations, and in most instances names himself as an officer of these entities. (*Id.* ¶¶ 23-24.) In some instances, Siegel purports to maintain corporate records of the companies and oversees or assists his customers with financial record-keeping for the companies. (*Id.* ¶ 24.)

8. Siegel advises his customers that the "C" corporations he establishes have no business purpose. (*Id.* ¶ 26.) He falsely advises customers that by establishing an out-of-state "C" corporation, their entire home becomes an out-of-state business office with living quarters, which can then pay for the customer's personal expenses incurred while living in the purported out-of-state business office (*i.e.*, the customer's home). (*Id.* ¶¶ 27, 29.) Siegel contends, falsely, that unlike a salary paid by the corporation to its employees, these payments by the corporation for customer personal expenses do not need to be reported as compensation on the customer's individual tax returns and can be deducted as business expenses on "C" corporation tax returns. (*Id.*, ¶¶ 27, 37-38.)

9. Siegel further falsely advises customers that they can characterize their home as an out-of state business office by creating a fictitious employment obligation between the individual customer and their "C" corporation. (*Id*. ¶ 28.) For example, Siegel falsely advises his customers that to treat their home as an out-of-state corporate office for federal tax purposes, the customer's Nevada "C" corporation (*i.e.*, an entity entirely controlled by Siegel and the customer) must require as a condition of employment that its corporate officers (*i.e.*, the same Siegel customer) live in the customer's California home while working away from the corporation's purported home state of Nevada (*i.e.*, a state where the Siegel customer typically has no actual contact). (*Id*.)

10. Siegel has falsely advised customers by e-mail that this scheme is valid because: (a) the customers, as business owners, are necessarily "on call 24/7" while living or working from their out-of-state "business office;" (b) the customers can deduct [their] rent and other expenses through [their] corporation when [they] are on call for that corporation"; and (c) while "the internet was just getting hot for being on call" in 2002, "[w]ithout a question in 2013 when we are truly on call 24/7 working at home is a deduction for the corporation." (*Id*. ¶ 31.) Siegel even provided his customers with a "memo" he sent to his customers where he falsely advised, leaving blanks for the applicable customer names and missing legal authority, that:

> As noted by _____ himself, "working at [a] business office in which he also stays" is the only way his corporation can efficiently operate it's [sic] business which is on Internet time 24/7/365. Thus requiring the Corporation's key employee(s) to live on the Corporation's business premises makes good business sense.

4

15-cv-00643-GPC-WVG

1 (*Id.* ¶ 32.)  Siegel falsely told a colleague that this tax benefit can be substantial
2 because "[t]he housing can [b]e luxurious and cost thousands a [] month.  There is
3 an assumption that corporations don't waste money."  (*Id.* ¶ 34.)

4       11.    When Siegel's customers ask for details and an explanation about
5 what he is doing on their behalf, Siegel avoids providing them with information.
6 (*Id.* ¶ 36.)  Instead, Siegel falsely assures his customers that, among other things:
7 (i) he is a qualified C.P.A., licensed tax attorney, and tax expert with years of
8 experience; (ii) he cannot fully educate these customers who lack tax expertise;
9 and (iii) they should simply trust him.  (*Id.*)

*Fraudulent Tax Returns*

11       12.    Siegel uses the out-of-state "C" corporations he establishes for
12 customers to improperly reduce their reported tax liabilities and to claim fraudulent
13 tax refunds on returns he either prepares or directs his employees to prepare.  (*Id.* ¶
14 37.)  Specifically, Siegel falsely assures customers that by characterizing their
15 homes as offices, this fiction allows them to deduct personal expenses, such as
16 meal costs, utility bills, payments for their home, and vehicles driven at least in
17 part for personal use, as business expenses on the "C" corporation tax returns that
18 Siegel prepares or directs his employees to prepare.  (*Id.*)  Similarly, Siegel falsely
19 advises that these personal expenses paid by the customers' "C" corporations do
20 not need to be reported as compensation on individual income tax returns that
21 Siegel prepares or directs his employees to prepare.  (*Id.*)

22       13.    Siegel claims improper business expense deductions on Schedule C of
23 customer individual tax returns.  (*Id.* ¶ 43.)  He also provides specific guidance to

his customers about which personal expenses to track so that Siegel can improperly claim them as business expense deductions on "C" corporation tax returns he prepares (or employees acting at Siegel's direction prepare). (*Id.* ¶ 39.) Siegel fraudulently attempts to conceal the improper deduction of personal expenses of his customers on "C" corporation tax returns by lumping the bogus deductions into a single, large deduction and categorizing them as supplies or office expenses on corporate tax returns he prepares. (*Id.* ¶ 41.) On the "C" corporation tax return for one customer, Siegel also claimed deductible business expenses for a non-existent insurance warranty and a fictitious employee benefit plan. (*Id.* ¶ 42.)

*Evading Payment of Employment Taxes*

14.  Siegel advises and assists customers to use their out-of-state "C" corporations to mischaracterize income paid from the "C" corporation to individual customers as royalties, consulting fees, or rental payments. (*Id.* ¶ 45.) Siegel falsely claims that by mischaracterizing income from "C" corporations to individual customers, customers can transfer funds collected by the "C" corporation from business operations to the individual customer, while exempting those payments to the customers from federal employment taxes. (*Id.*)

15.  To mischaracterize income as royalties, Siegel falsely advises his customers that their out-of-state "C" corporations can acquire customers' "intellectual property," which according to Siegel includes the customers' professional skills and expertise. (*Id.* ¶ 47.) For the "C" corporation to purportedly accomplish this, Siegel improperly advises his customers to enter into "License Agreements" with their "C" corporation, which Siegel has drafted, for the

corporation to purportedly acquire a "lease" for control over the customers' professional skills and knowledge. (*Id.* ¶¶ 47-48.) Under this sham arrangement, Siegel falsely contends that customers can receive payments from their "C" corporation and classify these sums on "C" corporation returns as "royalties," which Siegel erroneously contends makes the payments exempt from employment taxes. (*Id.* ¶ 47.)

16. Siegel knows that characterizing income as royalties under sham "License Agreements" is improper. (*Id.* ¶ 53.) In 2014, when asked by a colleague about this practice, Siegel asserted that mischaracterizing income as royalties is "not a problem unless the IRS finds it." (*Id.*)

17. Siegel also prepares or direct his employees to prepare tax returns that falsely mischaracterize his customers' income, which is subject to employment tax, as "consulting" fees from the "C" corporation. (*Id.* ¶ 55.) To reduce or eliminate the customers' individual tax liability, Siegel then claims bogus deductions, such as supplies, office, and contract labor expenses on Schedule C of the customers' individual tax returns. (*Id.*)

*Delay and Obstruction of IRS Examinations*

18. During IRS audits of Siegel's customers, when the IRS requested documents to substantiate positions Siegel claimed on customers' tax returns, Siegel failed to provide the necessary documentation and attempted to delay and obstruct the IRS examinations. (*Id.* ¶ 69.) For example, Siegel: (a) told a customer that he would "inundate the IRS" with documentation in order to obstruct their audit; (b) knowingly provided false corporate documents and bogus contracts

to the IRS in order to deceive auditors; and (c) lied to IRS officials during U.S. Tax Court litigation when asked to confirm information on behalf of his customers. (*Id.*)

*Filing Tax Returns Without Customer Authorization*

19.     On at least two occasions, Siegel filed tax returns for customers without authorization.  (*Id.* ¶ 70.)  In 2013, he filed a tax return for a "C" corporation without reviewing the return with the customer or requesting permission to file it.  (*Id.*)  Similarly, Siegel filed an individual 2009 tax return for another customer without her authorization.  (*Id.* ¶ 71.)  Prior to filing that return, Siegel recommended to that customer that she fail to report over $80,000 of alimony income in order to evade paying federal income tax.  (*Id.*)  Siegel advised the customer that if the IRS found out about the unreported alimony payments, they could address the matter at that time.  (*Id.*)  The customer informed Siegel that she wanted to report these alimony payments on her tax return and did not want Siegel to file her 2009 tax return.  (*Id.*)  Siegel ignored her and filed the return without her permission and without reporting her alimony payments.  (*Id.*)

*Misrepresentation of Credentials, Use of False Identities,
and Unauthorized Practice of Law*

20.     Although he lost his law and C.P.A. licenses, Siegel has repeatedly and falsely represented to customers, government agents, and the public-at-large that he is a licensed attorney and/or C.P.A.  (*Id.*, ¶ 56.)  Siegel has also concealed his legal name from customers and assumed false identities, including Lawrence Preston Lave (*see* ¶ 22 , below), in order to make it difficult to discover his true

professional and criminal background. (*Id.*) Siegel illegally practices as a C.P.A. and lawyer without any licenses. (*Id.*)

21. To solicit business, Siegel falsely represents to the public that he is licensed to practice law, has a C.P.A. license, and has falsely claimed to customers that he is a former IRS employee. (*Id.*, ¶¶ 57, 58, 61.) Siegel also improperly encourages his customers to hire him to perform legal services. (*Id.*, ¶ 62).

22. To conceal his background and deceive customers, Siegel has fabricated professional certificates in his business office, including a purported C.P.A. license and certificate from the Supreme Court of the State of California for admission as an "Attorney and Counselor at Law." (*Id.*, ¶ 59.) Both certificates conceal his actual legal name, Lawrence Preston Siegel, and display the alias "Lawrence Preston Lave." (*Id.*)

23. Even after his customers learned of Siegel's multiple aliases during IRS audits of tax returns that Siegel prepared (or his employees prepared at his direction), Siegel continued to lie to his customers about his true identity. (*Id.*, ¶ 66.) In 2013, when two customers asked Siegel about his multiple aliases, Siegel falsely responded that the IRS was "just making stuff up." (*Id.*) Similarly, in 2013, when another customer asked Siegel why the IRS was asking questions about their understanding of Siegel's qualifications as a lawyer, Siegel falsely told them that he simply owed membership dues to the California bar, when in fact, he resigned in 1994 with charges pending against him. (*Id.*)

24. Siegel also falsely represented his qualifications and identity to the IRS. (*Id.*, ¶¶ 63, 64, 67.) In 2010 and 2011, Siegel submitted forms to the IRS to

represent his customers under IRS audit, signed by him under penalty of perjury, which falsely claimed he was a licensed C.P.A. in California. (*Id.*, ¶ 63.) Siegel also routinely lists false identifiers on tax returns he prepares and files with the IRS by using the preparer tax identification numbers ("PTINs") and electronic filing identification numbers ("EFINs") of others in order to evade detection. (*Id.*, ¶ 67.) In addition, Siegel has forged the signatures of other licensed attorneys on correspondence he sent to the IRS on behalf of his customers and impersonated these attorneys on telephone calls with the IRS. (*Id.*, ¶ 64.)

25. Siegel is not eligible to appear as counsel for his customers in federal court, but nonetheless drafted and filed documents in U.S. Tax Court by impersonating licensed attorneys on behalf of at least one customer. (*Id.*, ¶ 65.) Siegel repeatedly deceived this customer, the IRS, and the Tax Court during a proceeding Siegel initiated on the customer's behalf and, on at least one occasion, forged the customer's signature on a document Siegel filed in U.S. Tax Court. (*Id.*)

26. Siegel understood that concealing his true identity and felony convictions, as well as the loss of his law and C.P.A. licenses, was important to maintaining his tax practice and convincing customers that his tax fraud schemes were actually legal. (*Id.*, ¶ 68.) As Siegel wrote in an April 16, 2014 e-mail to a colleague regarding their professional dealings: "Look … I guess it is hard to believe I am telling the truth, since I was forced to skirt the truth the last 20 years because of what they did to me the first time 20 years ago." (*Id.*)

*Harm Caused by Siegel*

27. The United States is harmed by Siegel's conduct because the IRS must continually devote limited resources to detecting and examining inaccurate returns filed by Siegel's customers, attempt to assess and collect unpaid taxes, and investigate Siegel's conduct. (*Id.*, ¶ 74.) Siegel also harms his customers by deceiving them about the legality of his schemes and the positions he takes on their tax returns. (*Id.*, ¶ 75.) These customers are liable for taxes owed and potential penalties for following Siegel's advice. (*Id.*) Finally, Siegel's misconduct harms the public at-large by undermining the public confidence in the federal tax system and encouraging violations of the internal revenue laws. (*Id.*, ¶ 76.)

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

CAROLINE D. CIRAOLO
Acting Assistant Attorney General
Tax Division

s/ Russell J. Edelstein
RUSSELL J. EDELSTEIN
MA Bar No. 663227
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238 – Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-2704; Fax: (202) 514-6770
russell.j.edelstein@usdoj.gov
**Attorneys for Plaintiff**

Dated: September 2, 2015     **United States of America**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2015, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, and that pursuant to Fed. R. Civ. P. 5(b)(2)(C) I will send the foregoing to defendant Lawrence Preston Siegel by regular mail at his last known addresses:

> 7437 South Eastern Avenue
> Apt. 235
> Las Vegas, NV 89123
>
> 6105 Pontiac Street
> San Diego, CA 92115

I further certify that on September 2, 2015, I will send an electronic copy of the foregoing to Siegel's last known e-mail address of aaaamerican@gmail.com and to Samuel D. Brotman, 5134 Saratoga Avenue, Suite 5, San Diego, CA 92107, sbrotman@sambrotman.com, by regular mail and electronic mail.

> s/ Russell J. Edelstein
> RUSSELL J. EDELSTEIN
> U.S. Department of Justice
> Tax Division